### WILSON v. HERMAN.
No. 67-7053.

Circuit Court, Broward County.

November 12, 1968.

Miller, Tucker, Roth & Prominski, Pompano Beach, for plaintiff.

Kendall T. Moran, Titusville, for defendant.

LAMAR WARREN, Circuit Judge.

*Final judgment:* In her complaint plaintiff alleged that she was married during May, 1963, to the father of the defendant, who was his daughter; that at the time of the marriage the father owned certain real estate in his individual name; and that a quit claim deed of the property given by the father, prior to his death, to the defendant daughter and himself "as Jt. Tenants with R/S" was void and that there never was a delivery of the same. The answer denied the allegations of marriage and non-delivery of the deed, and in her counterclaim defendant alleged that at the time of the execution of the deed Wilson was unmarried. The plaintiff in her answer to the counterclaim denied this allegation.

The father died March 22, 1967; on June 7, 1966, he gave the above quit claim deed.

The brief of the plaintiff was prefaced with the statement that the case revolved around the marital status of C. Frank Wilson, deceased, on June 7, 1966 (the date of the deed), and flowing therefrom, the validity of the quit claim deed executed by him on said date. In her reply brief, the defendant concurred in the plaintiff's statement of the basic issue, which was the marital status of C. Frank Wilson at the time of the execution of the deed.

The evidence as to the marriage of the plaintiff to the decedent consisted of a neighbor who testified "he didn't talk too much about his marital status," but that on one occasion he said he had to do things "for my wife because she works hard"; that they commenced living together about 1964, and he always called her "his wife," and so "introduced her to us as his wife," saying, "I want you to meet my wife, Ruth."

Another witness, who had known decedent many years, testified that about January, 1963, "he was going with her I believe," and that less than a year after that "he told me that he was married to her." The witness further stated that "he said it was his wife, Mrs. Wilson," and "I went out with them frequently, and he always introduced her as his wife. Even my boss." Further, that "he said many times that he was married, and then several times he confided in me and said they weren't married at the time." Further, "in 1966, around November, I think it was, or prior to that * * he went to New Orleans with [her], and when they came back, he told me that he finally did it, that he was married; and Ruth showed me the diamond and also the license." Wilson never went back on that statement that "we finally did it," and say he was kidding the witness in November, 1966.

Plaintiff's next witness went to work for decedent in 1965, and was introduced to plaintiff and to others by decedent as his wife.

The next witness, who worked for decedent, was asked by decedent "to meet his wife," however, when decedent was in a hospital in late 1966 or early 1967 (his death occurred March 22, 1967), he told the witness that she really was not his wife. The witness was very close to him prior to his death. After he got out of the hospital "he told me he was married." He understood he got married to her "about six months before he died."

A bond employee testified to decedent giving the name of plaintiff as his wife, and a written application to Jordan-Marsh showed plaintiff as his wife.

The attorney who drew the quit claim deed and who had performed work for decedent in the past stated that "there was enough in that conference that day, the date of the deed, for me to rest assured that he had not remarried, that he did not have a wife."

After the plaintiff rested, the defendant testified that in January, 1963, the plaintiff was living with her father on the premises and that on later visits by her she found the plaintiff living there with her father.

The court finds it necessary to resolve the evidence in favor of the defendant, two of plaintiff's witnesses having related admissions by the decedent — one occasion being while he was in the hospital a few months before his death — that he was not married to plaintiff, and while there was testimony concerning a marriage in New Orleans, which parenthetically was after the date of the deed, no documentary proof of the same was offered. His attorney was of the understanding that decedent was not married at the time of the conference and preparation of the deed.

If cohabitation is shown to have been illicit in its inception, the illicit relation will be presumed, in the absence of proof to the contrary, to have continued. 21 Fla. Jur., *Marriage*, §45. The testimony before the court was that the parties were living together before the alleged month of marriage in 1963.

It is therefore ordered that — (1) No common law marriage existed between plaintiff and the decedent, plaintiff having failed to show such marriage by the greater weight of the evidence. (2) As between these parties the defendant is entitled to the possession of the real property described in the deed. (3) The court retains jurisdiction to enter such further orders herein as may be required and for the taxation of costs.